Jeffrey THRASHER, Douglas H. Thrasher and Rose Thrasher, Plaintiffs,

v.

GENERAL CASUALTY COMPANY OF WISCONSIN, the School District of Monroe, Maurice A. Sathoff, James Munro, Superintendent, and William Dehn, Defendants.

No. 89–C–802–S.

United States District Court,
W.D. Wisconsin.

March 19, 1990.

# 967

Allen D. Reuter, Clifford & Relles, Madison, Wis., for plaintiffs.

Mary L. McDaniel, Bell, Metzner, Gierhart & Moore, Robert Wixson, Winner, McCallum, Wixson & Pernitz, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Defendants James Munro, Maurice A. Sathoff, the School District of Monroe and General Casualty Company of Wisconsin have moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, against the plaintiffs Jeffrey Thrasher, Douglas Thrasher and Rose Thrasher. Defendants William Dehn and General Casualty Company of Wisconsin, have also moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, against the plaintiffs. This Court's jurisdiction is based on 28 U.S.C. § 1331. Motion of defendants James Munro, Maurice Sathoff, the School District of Monroe and General Casualty for summary judgment is granted. Motion of defendants William Dehn and General Casualty Company for summary judgment is granted in part and denied in part.

## FACTS

For purposes of this motion the following facts are found to exist without dispute.

On September 5, 1986, plaintiff Jeffrey Thrasher was a student at Monroe High School. Defendant James Munro was the Superintendent of Schools for the Monroe School District and Maurice Sathoff was the Principal of Monroe High School. Defendant William Dehn was a mathematics and physical education instructor at Monroe High School. General Casualty Company of Wisconsin had issued to the Monroe School District a policy of liability insurance that covered acts and omissions of the School District and its employees and agents. This policy was in effect on September 5, 1986.

On September 5, 1986, Jeffrey Thrasher was a student in Dehn's fifth hour mathematics class. During the class hour Dehn asked Thrasher to pay attention to his work. Subsequently Dehn asked Thrasher to solve a problem on the blackboard. Thrasher refused to solve the problem. At the end of the class hour Dehn asked Thrasher to stay after class. After the other students had left the classroom Dehn made a statement to Thrasher to the effect that, "We're going to have a problem if you don't follow along with what I'm doing." During the time Dehn made this statement he used some portion of his fist or hand to move Thrasher's face and/or neck so that Thrasher was looking him in the eye. Subsequently, Thrasher used one or both of his hands to remove Dehn's hand or hands. Dehn responded by grabbing Thrasher's jacket and either pushed or threw Thrasher into the blackboard. After Thrasher was placed against the blackboard there was a verbal exchange. Dehn straightened Thrasher's jacket and Thrasher departed the classroom. At the time of the incident there was a "physical force" policy in ef-

fect in the Monroe Public Schools. The "physical force" policy provides:

It is judged by the board that the use of physical force on students for disciplinary purposes may be necessary under certain situations to maintain discipline. However, the board believes that other avenues of affecting student behavioral change should first be explored to their fullest extent. In order to control the use of physical force in Monroe Schools, the board establishes the following guidelines:

(1) Any physical force should be limited to the use of the hands to direct a pupil towards a desired location or to remove a student from the classroom.

(2) Physical force may be administered to address an incident that requires immediate attention.

(3) Physical force will not be inflicted with malice or be used for revenge.

(4) A written explanation of the punishment will be furnished to the student's parents or guardian upon request within ten days of the incident.

Any instances occurring in #2 above shall be reported in writing to the district administrator for review.

Physical force used for the purpose of self-defense, for the protection of persons or property, to obtain a weapon or other dangerous object possessed by a student, or to restrain a student from injuring others may be necessary.

Other facts specific to the individual causes of action will be addressed in the following opinion.

## INTRODUCTION

The issue in this case, despite plaintiffs' attempts to characterize it otherwise, is whether Dehn's actions exceeded the boundaries of disciplinary corporal punishment. Plaintiffs assert that Dehn was not disciplining Thrasher when he pushed or threw Thrasher against the blackboard and accordingly court decisions concerning a teacher's actions in corporal punishment cases are not applicable. Although Dehn's act of throwing or pushing Thrasher into the blackboard may not have been motivated by a need to discipline Thrasher, the context in which this physical force arose was in a school disciplinary setting. The event giving rise to the incident, where Thrasher was asked to remain after class to discuss his classroom behavior, is of a disciplinary nature. Accordingly, this Court will analyze the plaintiffs' causes of action and defendants' motions in accord with the law as set forth in disciplinary corporal punishment cases where available.

## MEMORANDUM

Summary judgment shall be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Pursuant to Rule 56 the moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Subsequently, the court should review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the nonmoving party. *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987).

Plaintiffs assert that the defendants are liable pursuant to 42 U.S.C. § 1983 for violating Jeffrey Thrasher's Eighth, Fourteenth and Fourth Amendment rights. 42 U.S.C. § 1983 provides in pertinent portion:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

There is no dispute that the actions of these defendants were conducted under the color of state law. The only dispute is whether the alleged conduct deprived the plaintiffs of any right, privilege or immunity secured by the Constitution. In order to examine this issue in an organized fashion the federal constitutional claims against defendant Dehn will be addressed followed by the claims against the defendant School District and its officials. Plaintiffs have also alleged state law causes of action against the defendants and these will be addressed at the conclusion of this opinion.

## DEFENDANT DEHN

### The Eighth Amendment Claim Against Dehn

█ "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Constitution, Amendment VIII. The Eighth Amendment has traditionally been used to scrutinize government actions which occur after a criminal prosecution. *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1976). Plaintiffs assert that Dehn violated Jeffrey Thrasher's Eighth Amendment rights when defendant Dehn engaged in an act of physical force on September 5, 1986. The United States Supreme Court has explicitly stated that the Eighth Amendment protection against cruel and unusual punishment is not to be used to scrutinize the imposition of disciplinary corporal punishment in public schools. The *Ingraham* Court held:

> The openness of the public school and its supervision by the community afford significant safeguards against the kinds of abuses from which the Eighth Amendment protects the prisoner. In virtually every community where corporal punishment is permitted in the schools, these safeguards are reinforced by the legal constraints of the common law. Public school teachers and administrators are privileged at common law to inflict only such corporal punishment as is reasonably necessary for the proper education and discipline of the child; any punishment going beyond the privilege may result in both civil and criminal liability.... As long as the schools are open to public scrutiny, there is no reason to believe that the common-law constraints will not effectively remedy and deter excesses ...

> We conclude that when public school teachers or administrators impose disciplinary corporal punishment, the Eighth Amendment is inapplicable. The pertinent constitutional question is whether the imposition is consonant with the requirements of due process.

*Ingraham v. Wright*, 430 U.S. 651, 670–71, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1976).

Accordingly, while Dehn's conduct may have exceeded the parameters of "disciplinary corporal punishment," the Eighth Amendment is not the proper vehicle by which to impose liability.

### Due Process Claims Against Dehn—Fourteenth Amendment

#### A. Procedural Due Process

Plaintiffs assert that Dehn violated Thrasher's Fourteenth Amendment right to due process. However, the plaintiffs' only claim against Dehn appears to revolve around a Fourteenth Amendment substantive due process violation and not procedural due process. Plaintiffs' argument that Thrasher's right to procedural due process was violated is asserted against the defendant School District, Sathoff and Munro. Plaintiffs argue at page 17 of their Brief in Opposition to Summary Judgment that "Thrasher's liberty interest would have been adequately protected if the school district required the presence or approval of the high school principal prior to the initiation of physical contact as did the regulations involved in the *Ingraham* case." Apparently, from plaintiffs own brief, Dehn is not said to have violated Thrasher's right to procedural due process. Whether the

school district or its officials are liable for such a violation will be discussed below.

## B. Substantive Due Process

■ Cases of disciplinary corporal punishment have been scrutinized using a substantive due process analysis. Courts have recognized the right to substantive due process as the proper method by which to impose constitutional liability on a public school teacher for improper punishment of a school child. "A decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment." *Metzger By and Through Metzger v. Osbeck*, 841 F.2d 518, 520 (3rd Cir.1988).

Various tests have been established to determine whether a school official's conduct when administering physical punishment has violated a child's substantive due process rights. Although the Seventh Circuit has not set forth a test, other jurisdictions have set forth adequate criteria. The Eighth Circuit has adopted a four part test to determine if the physical force administered by a teacher crossed the constitutional line. The test provides:

(1) The need for the application of corporal punishment;

(2) The relationship between the need and the amount of punishment administered;

(3) The extent of injury inflicted;

(4) Whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.

*Wise v. Pea Ridge School District*, 855 F.2d 560, 564 (8th Cir.1988). Another commonly referred to standard was stated by the Fourth Circuit in *Hall v. Tawney*, 621 F.2d 607 (4th Cir.1980). The *Hall* court stated:

As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.

*Hall* at 613.

■ Applying these tests to the circumstances surrounding this incident there does not appear to be a substantive due process violation. However, it is not the Court's duty to weigh the evidence, and in fact the Court must construe the evidence in a light most favorable to the non-moving party, in this case the plaintiffs. The plaintiffs have set forth sufficient facts of physical and emotional injury to Thrasher and have sufficiently placed in dispute Dehn's intent that a jury question exists concerning the presence of a substantive due process violation. The Court finds persuasive the logic in *Metzger By and Through Metzger v. Osbeck*, 841 F.2d 518 (3rd Cir.1988) that summary judgment is an inappropriate mechanism to dispose of this type of claim. "[A] court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases 'much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder.'" *Metzger* at 521 citing *Watts v. University of Delaware*, 622 F.2d 47, 52 (3rd Cir.1980). The mere fact that Dehn claims his actions were a "reaction" is not sufficient to conclude as a matter of law that he was not acting with malice. In addition, there are factual issues surrounding the actual events that occurred in the classroom to preclude resolution by summary judgment. For example, there are factual issues in dispute concerning whether Dehn choked Thrasher and the amount of force Dehn actually applied during the encounter. Finally, in order to glean an accurate account of the events that occurred in the classroom, the credibility of Dehn and Thrasher will become an important factor. Credibility issues are not readily resolvable

by the summary judgment mechanism. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Accordingly, summary judgment cannot be granted concerning the Fourteenth Amendment substantive due process claims.

*Fourth Amendment Claim Against Dehn*

■ One of the rights guaranteed by the Fourth Amendment is the right to be free from unreasonable seizures of one's person. U.S. Constitution, Amendment IV. However, the Fourth Amendment has never been used to find a constitutional violation of a student's rights when the student was allegedly exposed to an overuse of physical force. The Seventh Circuit has indicated that the Fourth Amendment was designed to deal with abuse in arrest situations only. "Unlike the Fourteenth Amendment, 'the Fourth Amendment is specifically directed to methods of arrest and seizure of the person.'" *Lester v. City of Chicago*, 830 F.2d 706, 710 (7th Cir.1987) citing *Bell v. Milwaukee*, 746 F.2d 1205, 1278 n. 87 (7th Cir.1984). Notably, the Supreme Court in *Ingraham v. Wright*, 430 U.S. 651, 673 n. 42, 97 S.Ct. 1401, 1413 n. 42, 51 L.Ed.2d 711 stated: "[T]he principal concern of that Amendment's prohibition against unreasonable searches and seizures is with intrusions on privacy in the course of criminal investigations." Accordingly, in light of the narrow use of the Fourth Amendment by the Seventh Circuit and the statement by the U.S. Supreme Court in *Ingraham*, this Court is not compelled to provide the Fourth Amendment as a method to impose liability pursuant to these circumstances. In addition, although Thrasher was seized within the literal meaning of that term when he was pushed, thrown or shoved against the chalkboard, this contact constitutes a *de minimus* level of imposition that does not warrant the invocation of Fourth Amendment protection.

## DEFENDANTS MUNRO, SATHOFF AND THE SCHOOL DISTRICT

■ The defendants School District of Monroe, School Superintendent James

Munro and Principal Maurice Sathoff cannot be liable for the acts of defendant Dehn on the basis of a theory of respondeat superior. In order to be liable to the plaintiffs the entity and its officials must have either directly participated in the alleged incident against Thrasher or promulgated a school policy that was the "moving force" of the constitutional violation. There is no supporting evidence that the school entity through or by its officials directly participated in the September 5, 1986 incident. Accordingly, in order to establish liability on the part of any of these defendants, the school physical force policy must be scrutinized using the test found in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977), "that the municipal policy must be 'the moving force of the constitutional violation.'" *Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1984). As a matter of law this Court has found that the Fourth and Eighth Amendments of the Constitution are not implicated pursuant to the circumstances of this case. Therefore, the School District's policy need only be analyzed to determine if it could be considered the "moving force" behind a Fourteenth Amendment violation.

Prior to applying the *Monell* test in detail it is important to note that this is *not* a case where an employee or official was following or purporting to follow an official policy when the alleged abuse occurred. The issue is simply whether the force applied by Dehn was unconstitutional and not whether he followed the policy. While Dehn may have exceeded the terms of the policy, the Court does not believe or find that the policy was the "moving force" behind any constitutional violation. Contrary to plaintiffs' attempt to characterize the policy as overly broad and lacking in protections and limitations, the Court finds that the terms of the policy are quite specific. A plain reading of the policy reveals that physical force is to be limited to the use of hands to direct a pupil towards a desired location or to remove a student. A further limitation is placed on this use of

physical force by allowing physical force only in situations that require immediate attention. Finally, the School District's policy does not condone random acts of violence or the use of physical force to harm students under the guise of discipline. With these features in mind the Court will separately address whether procedural or substantive due process rights were infringed because of the policy.

*Procedural Due Process—Fourteenth Amendment*

■ Plaintiffs attempt to attack the policy as unconstitutional on its face by claiming that the policy contains no procedural protections and that the School District policy should have required the presence or approval of the principal prior to initiation of physical contact. While neither plaintiffs nor defendants provide the Court with any persuasive arguments as to this claim, the Court is convinced that the policy as it exists is not unconstitutional on its face. The policy was designed to address those situations which require *immediate* disciplinary attention. Procedural safeguards that require the presence of the principal would be futile in the situations which the policy was drafted to address. In addition, the fact that Dehn may have exceeded the parameters of the policy by allegedly applying physical force in a situation that did not require immediate attention was not the result of the policy. Accordingly, the School District policy could not have been the "moving force" behind the constitutional violation.

*Substantive Due Process*

■ The resolution of this portion of the Fourteenth Amendment analysis is readily resolvable. In order to find Dehn liable a jury would have to conclude that his conduct was inspired by malice rather than a good faith effort to discipline. There is no evidence to indicate that the policy was the "moving force" that would have caused Dehn to act with malice. In fact, the policy forbids malicious imposition of physical fore. At most there is some evidence to indicate that the School District and its officials may have been negligent in com-

municating the terms of the policy. [Compare *Monell* where the policy compelled pregnant employees to take unpaid leave. In *Monell*, following the policy directly caused the constitutional violation.] Accordingly, all federal claims pursuant to 42 U.S.C. § 1983 are dismissed against the defendants School District of Monroe, Sathoff and Munro.

## STATE CLAIMS AGAINST ALL PARTIES

■ The only federal claim that remains in this case is an alleged Fourteenth Amendment substantive due process violation against Dehn. Because this Court has jurisdiction over the federal claim, it also has jurisdiction over the pendent state claims against Dehn sounding in battery and negligence.

There are no federal claims remaining against the defendants School District of Monroe, Sathoff and Munro. Consequently, the state negligence claims against these defendants are no longer properly before this Court. When federal claims are dismissed the pendent state claims should be dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although the argument could be made that this Court may exercise pendent party jurisdiction and retain the state claims against defendants School District of Monroe, Sathoff and Munro, this determination is within the discretion of the Court. As the operative facts concerning negligence on the part of the District, Sathoff and Munro are different from those required to resolve the question of liability concerning a Fourteenth Amendment violation on the part of Dehn, pendent party jurisdiction is not appropriate. *See Zabkowicz v. West Bend Co. Div. Dart Industries*, 789 F.2d 540 (7th Cir.1986). Plaintiffs' concerns relating to the Wisconsin Immunity Statute § 893.80(4) are no longer relevant. Accordingly, the motion for reconsideration filed on March 12, 1990 is denied.

## ORDER

IT IS ORDERED that the motion of defendant Dehn and General Casualty Com-

pany of Wisconsin for summary judgment is DENIED consistent with the provisions set forth herein.

IT IS FURTHER ORDERED that the motion of defendants School District of Monroe, Maurice A. Sathoff and James Munro for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' motion for reconsideration is DENIED.